```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA
```

HOLLIS HALL,                        )
                                    )
            Plaintiff,              )
                                    )
v.                                  )      Case No. CIV-15-004-FHS-KEW
                                    )
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security Administration,            )
                                    )
            Defendant.              )

**REPORT AND RECOMMENDATION**

Plaintiff Hollis Hall (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on February 25, 1961 and was 53 years old at the time of the ALJ's latest decision. Claimant completed his high school education. Claimant has worked in the past as a maintenance mechanic. Claimant alleges an inability to work beginning May 8, 2002 due to limitations resulting from depression, anxiety, degenerative disc disease, and COPD. The ALJ determined Claimant

3

has no past relevant work. (Tr. 2110).

**Procedural History**

On November 22, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") entered an unfavorable decision on June 15, 2009. On appeal, this Court reversed the decision and remanded the case by Order entered September 30, 2011.

A second administrative hearing was held on remand. The ALJ entered a second unfavorable decision on April 13, 2012. On appeal, this Court reversed the decision and remanded the case by Order entered September 25, 2013.

On May 6, 2014, a third administrative hearing was conducted before ALJ Bernard Porter by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On October 21, 2014, the ALJ issued a third unfavorable decision on Claimant's applications. Claimant did not file exceptions to the decision before the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes

of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to make a proper credibility determination; (2) arriving at an improper RFC determination; and (3) failing to give proper weight to the opinion of Claimant's treating physician.

**Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of history of polysubstance abuse, depressive disorder, anxiety disorder, personality disorder, degenerative changes of the right foot, degenerative disc disease of the cervical and lumbar spines, gastroesophageal reflux disease ("GERD"), chronic obstructive pulmonary disease ("COPD"), and temporomandibular joint disorder. (Tr. 2088-89). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, the ALJ determined Claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight hour

5

workday; push/pull as much as he can lift or carry; occasionally use hand controls with the left upper extremity; cannot reach overhead; frequently handle, finger, and feel with the left upper extremity; occasionally climb ramps and stairs, but never climb ladders or scaffolds; frequently balance and stoop and occasionally crouch; never crawl, should not work at unprotected heights or around moving mechanical parts; should avoid concentrated exposure to humidity, wetness, and dust, fumes, gases, and should avoid any environments with temperature extremes.  Claimant could perform simple tasks and make simple work-related decisions; have occasional interaction with supervisors and co-workers, but can have no interactions with the public.  The ALJ estimated that Claimant would be off task for five percent of the workday.  He should be allowed a sit/stand option that allows for a change in position every 30 minutes and the change would be brief, which is defined as lasting three to four minutes at a time.  (Tr. 2092).

After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of small products assembler, electrical assembler, and conveyor line bakery worker, all of which the expert testified existed in sufficient numbers both regionally and nationally. (Tr. 2111).  As a result, the ALJ found Claimant was not disabled from May 8, 2002

6

through the date of the decision. (Tr. 2112).

Claimant first asserts that the ALJ erred in his assessment of Claimant's credibility.[2] He initially states the ALJ used language in his credibility assessment which has been repeatedly rejected by this Court wherein the ALJ appears to determine the RFC before considering the credibility of a claimant's testimony. However, Claimant cites to a decision from June 15, 2009 which has long since been the subject of an appeal and been reversed and remanded. (Tr. 8-19). The decision currently on appeal does not contain the same offending language.

The ALJ in the decision currently under review proceeds issue-by-issue through Claimant's testimony, citing to evidence in the record which contradicts or refutes the allegations made by Claimant. (Tr. 2090, 2093-96). The ALJ also cites to the legal standard he must meet under the regulations and current case authority. (Tr. 2094).

It is well-established that "findings as to credibility should

---

[2] Defendant asserts that Claimant's arguments should be deemed waived because they are "unspecific, undeveloped, and unsupported." This Court agrees with Defendant that Claimant has put in a minimal effort in the preparation of the briefing, citing to an ALJ decision which was previously reversed on appeal and providing generalized arguments in his brief no the points of error raised. To the extent the arguments asserted by Claimant can be reasonably ascertained from the briefing, this Court will address the allegations of error so that Claimant is not prejudiced by the less than stalwart effort in asserting the legal and factual arguments.

7

be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler,

68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ provided a thorough analysis of Claimant's credibility in light of the objective medical record. No error is found in the analysis.

**RFC Determination**

Claimant again cites to a prior reversed decision of the ALJ in challenging the assessment of the RFC. The only specific allegation made by Claimant is that the ALJ did not properly consider his anxiety and depression in his RFC. The ALJ found Claimant's anxiety and depression to be severe impairments at step two of the sequential evaluation. (Tr. 2088-89). He then applied the special technique in assessing Claimant's degree of limitation in each of the four broad functional areas - activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. (Tr. 2090-92). He determined Claimant did not meet or equal a listed impairment at step three after proceeding through the paragraph A and B criteria. (Tr. 2089-92).

The ALJ did incorporate several limitations in the RFC to accommodate the mild to moderate mental limitations found by Dr.

9

Denise LaGrand in her medical source statement (Tr. 1546-48) and her examination report. (Tr. 1549-54). "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

**Consideration of the Opinion of the Treating Physician**

Claimant contends the ALJ failed to properly weigh the opinion

of his treating physician, Dr. Mark Rogow. Dr. Rogow authored a physical medical source statement on September 15, 2009. He found Claimant could sit for 40 minutes, stand for 30 minutes, and walk for 20 minutes at one time. He determined Claimant could sit for four hours, stand for two hours, and walk for 40 minutes during an eight hour workday. He found Claimant could not engage in fine manipulation with either hand and could not push and pull with his left hand. Claimant also could not engage in repetitive movement with his feet, such as using foot controls. Dr. Rogow found Claimant could occasionally bend, crawl, reach above head, stoop and kneel but never squat, climb, or crouch. (Tr. 1587).

He also noted Claimant should never be exposed to unprotected heights, be around moving machinery, drive automotive equipment, or be exposed to noise while occasionally being exposed top marked temperature changes and to dust, fumes, and gases. Claimant would need to take unscheduled breaks during an eight hour workshift, according to Dr. Rogow and he would be absent from work for more than four days per month. Claimant would also need to elevate his feet periodically during the day. (Tr. 1588).

The ALJ afforded Dr. Rogow's opinion "little weight", finding it to be not fully supported by nor consistent with the medical evidence in the record. The ALJ cites to the inconsistencies in the

11

treatment records generated by Dr. Rogow contemporaneously with rendering treatment. No hand manipulation testing was done during treatment, no treatment for respiratory problems such that the restrictions in on the source statement were supported - instead finding Claimant's lungs to be clear, and he reported that the main point of Claimant's visit was to be evaluated for disability with the forms being provided by Claimant's lawyer and, indeed, Claimant's first visit with Dr. Rogow resulted in the medical source statement. (Tr. 2107).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors

12

provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

While the ALJ might not have provided a point-by-point analysis under the Watkins factors, he did provide sufficiently clear

13

explanations of the reduced weight given to Dr. Rogow's opinion. The lack of consistency between Dr. Rogow's treatment records and the extreme limitations found in his source statement rightly resulted in the ALJ's dubious view of the veracity of the statement itself. This Court finds no error in the assessment of Dr. Rogow's opinion.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE